PER CURIAM.
In this disciplinary proceeding the referee has filed with this Court his report recommending that respondent be found guilty of professional misconduct and suspended for a period of one year effective April 8,1978, and thereafter until he shall prove his rehabilitation. Fla. Bar Integr. Rule, art. 11, Rule 11.10(3). The Bar filed a petition for review requesting that the suspension for one year (with proof of rehabilitation) be *850 come effective on the date the order is entered by this Court instead of on the date recommended by the referee.
In the first disciplinary proceeding (Case No. 55,344) respondent was found guilty of misconduct in failing to appear on behalf of his client (Gambrell), failing to turn over documents, and account for trust funds in connection with a real estate closing in which he represented William Smith, and issuing a worthless check which he failed to pay upon demand. In this proceeding the referee recommended that respondent be suspended for a fixed period of 91 days, (nunc pro tunc), April 8, 1978, the day on which respondent filed an affidavit consenting to refrain from the practice of law. In imposing this disciplinary measure, the referee observed:
First, it should be noted that the Respondent and the Grievance Committee Plea Bargained the plea of guilty on the part of the Respondent, conditioned upon his suspension for a term of six (6) months which plea of guilty was refused by the Board of Governors of The Florida Bar.
Second, it should be noted that the Respondent submitted an Affidavit, made upon the suggestion of the Florida Bar Grievance Committee, following the ruling of the Board of Governors, that the Respondent cease practicing law. This Affidavit was submitted into evidence as Respondent’s Exhibit “A”.
Third, it should be noted that the Respondent has been gainfully employed by Paladino Financial Group, a Collection Agency, which does “collection work and credit reporting”.
Fourth, the Respondent ceased practicing law on or about September 1, 1977, but in order to insure that he had rehabilitated himself, he went to a psychiatrist whom he visited twice a week for about two (2) months.
In the second disciplinary proceeding (Case No. 56,351), the referee made the following findings:
As to Count I
The complaint charges that the respondent was retained by one Lee Siegel on or about December 1975 for the purpose of handling a bankrupty [sic] matter. Mr. Siegel paid the respondent $500 in advance for the handling of the matter. Subsequently in July 1976, having heard nothing from respondent, Mr. Siegel inquired and was told by respondent that the bankruptcy proceeding had not been filed because the $50 filing fee had not been provided. Accordingly Mr. Siegel sent the required $50, but no action was taken by July 1977, and Mr. Siegel then requested a return of the monies he had paid. The respondent returned $250 to his client and stated that his former partner should return the balance. The former partner however refused to refund any monies to Mr. Siegel.
The Answer filed by respondent in this proceeding and the Response to the Request for Admissions confirmed the foregoing facts. Additionally, at the disciplinary hearing the respondent, both through counsel and in person, admitted the allegations contained in the instant count as well as in the other counts of the complaint.
As to Count II
The respondent was retained by Pablo and Hannah Perez-Cisneros to handle a personal injury and property damage action arising out of an automobile accident in which Mrs. Perez-Cisneros was involved. The respondent negotiated a settlement and received a check from the adverse party’s insurance company in the sum of $3500, which check was payable to Mr. and Mrs. Perez-Cisneros, to Raymond Seidler, and to Travelers Insurance Company, the Perez-Cisneros’ insurance carrier. At the respondent’s request, the Perez-Cisneros endorsed the check and it was sent to Travelers, who deducted $314.50 as reimbursement of “PIP benefits” (Personal Injury Protection) previously paid. Travelers apparently had paid the sum of $220.16 to the Perez-Cisneros to cover the *851 property damage claim under the Travelers policy. Although being entitled to be reimbursed for this amount, it was not deducted from the settlement check or otherwise paid to Travelers. An action was thereupon instituted against Mr. Perez-Cisneros by Travelers in the County Court for the foregoing sum. Upon Mr. Perez-Cisneros speaking with the respondent, the respondent advised him that he would “take care of the matter”. Notwithstanding these assurances, Mr. Seid-ler did not take care of the matter and did not appear at the County Court trial on behalf of Mr. Perez-Cisneros. Judgment thereupon was entered against Mr. Perez-Cisneros in the sum of $220.66, which judgment has been satisfied by Mr. Perez-Cisneros.
Again, the Answer filed by the respondent herein, the Response to the Request for Admissions and the respondent’s statements in person and through counsel that he admitted the allegations of this count, confirmed the foregoing facts.
As to Count III
One Margaret Jean Plath retained the respondent Seidler to represent her in an action for dissolution of marriage. During the pendency of that litigation Mrs. Plath paid $150 to respondent to cover the cost of taking Mr. Plath’s deposition. Mr. Plath’s deposition however was never taken, nor was the $150 ever returned to the client.
The respondent Seidler did not appear at the calendar call despite having knowledge thereof and Mrs. Plath’s pleadings were stricken.
Neither did the respondent attend the final hearing in the suit for dissolution of marriage, and a final judgment was entered against his client on or about December 12, 1977.
The allegations contained in Count III were again confirmed by the Answer herein, the Response to the Request for Admissions and the respondent’s own statements.
As to Count IV
Following the final hearing in the dissolution of marriage proceeding, Mrs. Plath received notification of the entry of the final judgment through her husband. She telephoned the respondent Raymond Seidler, who advised her for the first time that he had turned the matter over to another attorney. Mrs. Plath however hired a different attorney, George Car-det, Esq., who requested that the respondent turn over the pertinent portions of the file to him so that he could conduct a proper representation of Mrs. Plath. However, the respondent has not turned over any portion of that file to Mr. Car-det.
The referee recommended that respondent be found guilty on each count and recommended that he be suspended for a period of one year beginning April 8, 1978, and thereafter until he shall prove his rehabilitation. He recommended that this suspension be concurrent with any suspension in the prior disciplinary proceeding. (Case No. 55,344). The referee made the following comments:
Upon the respondent entering his admissions to all of the pertinent allegations of the complaint during the initial course of the disciplinary hearing, it became apparent that the only matters to be determined by the referee were matters in mitigation and thereafter the recommendations as to disciplinary measures to be applied. Respondent’s counsel pointed out that the instant complaints occurred during a period when the respondent was having a number of marital and psychiatric problems. The subject matter of the prior disciplinary proceedings likewise occurred generally within the same period. It was respondent’s contention that all of. the complaints should have been consolidated and determined before one referee. They were not, however, and respondent’s position appears to be that they were known by the Florida Bar and not presented to the referee in the prior proceeding, to the detriment of the respondent. Had the instant complaint been *852 presented to the prior referee however, it appears more likely that his recommendation would have been more severe. In any event, I should like the record to reflect that the referee is aware of the prior proceedings and has considered them. He is likewise aware of the statements that the respondent has voluntarily withdrawn from the practice of law since September 1977.
The Bar insists that the discipline recommended by the referee is too lenient and we should “instead impose a discipline which is commensurate with the gravity of the respondent’s misconduct.” The Bar argues the suspension should be for a period of one year beginning on the date the suspension order is entered.
In considering the mitigating circumstances as outlined by the referee we feel that the recommendation of the referee should be approved. Respondent is hereby suspended from the practice of law for a period of one year beginning April 8, 1978, and thereafter until he shall prove his rehabilitation. Respondent is further directed to pay the costs of these proceedings in the amount of $750.60. (Case No. 56,351.) Respondent is further directed to pay the cost of these proceedings in the amount of $434.30. (Case No. 55,344.)
It is so ordered.
ENGLAND, C. J., and ADKINS, BOYD and OVERTON, JJ., concur.